**WARNER BROS. INC.,
Plaintiff-Appellant,**

**J. Joseph Bainton, Esquire, Appellant,**

v.

**DAE RIM TRADING, INC., and Yun Yon Cho, Defendants–Appellees.**

Nos. 550, 557, Dockets 88–7730, 88–7732.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1988.
Decided June 12, 1989.

---

J. Joseph Bainton, New York City (Reboul, MacMurray, Hewitt, Maynard & Kristol, William Dunnegan, Bradley J. Andreozzi and Catherine J. Crowley, New York City, of counsel), for plaintiff-appellant.

Pasquale A. Razzano, New York City (Curtis, Morris & Safford, P.C. and James A. Killerlane, New York, New York, of counsel), for defendants-appellees.

Before VAN GRAAFEILAND,
MESKILL and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Warner Bros. Inc. ("Warner") appeals from so much of the final judgment of the United States District Court for the Southern District of New York (Wyatt, J.) as awarded it only $100 in statutory damages in this copyright infringement action, denied its claim for attorneys' fees and awarded defendants-appellees attorneys' fees in the amount of $38,498.61. J. Joseph Bainton, Warner's attorney, appeals from so much of the opinion of Judge Wyatt, 677 F.Supp. 740 (S.D.N.Y.1988), as finds that he violated Fed.R.Civ.P. 11. We affirm the award of $100 and the denial of fees for plaintiff-appellant's attorneys. We reverse and vacate the award of $38,498.61 to defendants-appellees' attorneys. We dismiss the appeal of Attorney Bainton with double costs and damages.

Sung Pil Cho, his wife, Yun Yon Cho, and their two children immigrated to the United States from Korea in 1978. During the six years that elapsed between their arrival in this Country and the start of the instant litigation on July 2, 1984, Mr. and Mrs. Cho acquired only a rudimentary grasp of English. Their testimony at trial was given with the aid of an interpreter. Despite this communication handicap, the Chos opened a small variety store on West 30th Street in New York City in 1982, where they sold inexpensive merchandise such as combs, wallets and mirrors. Although the business bore the impressive name Dae Rim Trading, Inc., it was a typical "mom and pop" operation, both of the Chos working twelve to fourteen hours a day, seven days a week.

In June 1984, Mrs. Cho purchased twelve small plastic dolls from a wholesaler. Unknown to her, these dolls were similar to a copyrighted character called "Gizmo" in a Warner movie. The Chos were not familiar with either the movie or the characters. On June 27, 1984, a private investigator for Warner visited the store and purchased six of these small figures for $15. Although Warner suffered no provable damage as a result of this almost-insignificant transaction, the Chos have been involved in litigation with Warner ever since—this, despite the fact that on November 2, 1984, the Chos offered to stipulate to the granting of a permanent injunction as demanded in Warner's complaint and an award of statutory damages in the amount of $250. *See* 17 U.S.C. § 504(c). The conceded reason why Warner has pressed this extended litigation was to secure a substantial award of statutory damages and attorneys' fees as a lesson and warning to defendants and other copyright infringers.

Although Warner's appeal is of necessity directed to the district court's judgment, the main thrust of its briefs is against Judge Wyatt's criticisms of the high-handed methods by which Warner pursued its claim of copyright infringement. Thirty-two pages of Warner's main brief and eight pages of its reply brief are devoted to this issue alone. In the paragraphs that follow, we state why, in the main at least, Judge Wyatt's criticisms were justified.

When Warner's investigator returned with news of his purchase, Warner's attorneys promptly prepared a complaint against Dae Rim and "John Doe", together with motion papers for what was designated a "Temporary Restraining Order, Seizure and Impoundment Order and Order to Show Cause for Preliminary Injunction and Accelerated Discovery." The complaint alleged that Warner owns copyrights for two

characters in its movie "Gremlins", one called "Gizmo", the other called "Stripe", and that the defendants willfully and knowingly offered for sale, distributed and publicly displayed "various products" bearing the likenesses of both characters. The fact of the matter is that the only Gremlin characters possessed by the defendants were the twelve "Gizmo" dolls purchased in June 1984, six of which were returned to the wholesaler after the defendants were informed of Warner's copyright. Judge Wyatt stated in his opinion that the certificate of plaintiff's attorney was not made after "reasonable inquiry" and was not "well grounded in fact" as required by Fed.R.Civ.P. 11. 677 F.Supp. at 765. However, Judge Wyatt made no award and imposed no sanctions as permitted by the Rule. *Id.* at 774.

The affidavit submitted by Warner's attorney in support of his proposed order evidenced a similar disregard of the facts. Mr. Bainton stated under oath that defendants were offering for sale and selling merchandise similar, if not identical, to both the copyrighted characters, that the infringing merchandise was "inferior" and its wrongful misappropriation had "irreparably damaged" Warner. Judge Sofaer, to whom Warner's application was submitted, was entitled to expect a more accurate statement of the facts from an officer of his court.

The order which Judge Sofaer was induced to sign directed the United States Marshal for the Southern District of New York, or one or more of his deputies, or "The Stonegate Agency, Inc., a private investigatory firm, through one or more of its employees" to "search defendants' business premises" and "seize forthwith and deliver to plaintiff's counsel pending further order of this Court" the infringing materials, their labels, wrappers, packages, plates, molds, matrices, etc., together with "all books, records, correspondence and other documents in defendants' possession, custody or control" which relate thereto or may provide information respecting vendors or purchasers thereof. Judge Wyatt held that these provisions violated copyright law, copyright rules and the Constitu-

tion. 677 F.Supp. at 767. Because we agree that Warner's attorney ran roughshod over the applicable statutes and rules, we follow standard practice in not reaching the issue of constitutionality.

Section 25 of the 1909 Copyright Act, Pub.L. No. 349, 35 Stat. 1075, 1081, which preceded the present Act, Pub.L. No. 553, 90 Stat. 2541 (1976), provided that a copyright infringer should be liable "[t]o an injunction restraining such infringement" (subd. a) and "[t]o deliver up on oath, to be impounded during the pendency of the action, upon such terms and conditions as the court may prescribe, all articles alleged to infringe a copyright...." (subd. c). The word "impound", as thus used, has a well-settled meaning in the law. It means to "take or retain in 'the custody of the law.'" *United States v. Louisiana*, 446 U.S. 253, 264, 100 S.Ct. 1618, 1625, 64 L.Ed.2d 196 (1980) (quoting *Black's Law Dictionary* 681 (5th ed. 1979); *Bouvier's Law Dictionary* 1515 (8th ed. 1914)); *see United States v. Birrell*, 242 F.Supp. 191, 202–04 (S.D.N.Y.1965).

It is not surprising, therefore, that, when the Supreme Court enacted a set of copyright rules, The Rules of Practice, as it was authorized to do by section 25(e) of the 1909 Act, 35 Stat. at 1082, it provided in Rule 4 that a writ for seizure of infringing articles should be "directed to the marshal of the district where the said infringing copies, plates, records, molds, matrices, etc., or other means of making such infringing copies shall be stated in said affidavit to be located, and generally to any marshal of the United States, directing the said marshal to forthwith seize and hold the same subject to the order of the court issuing said writ, or of the court of the district in which the seizure shall be made." Rule 5 directs the marshal to seize the articles "using such force as may be reasonably necessary in the premises," and to "make immediate return of such seizure, or attempted seizure, to the court." Rule 6 provides that "[a] marshal who has seized alleged infringing articles, shall retain them in his possession, keeping them in a

secure place, subject to the order of the court."

Section 503(a) of the 1976 Copyright Act, 90 Stat. at 2585, codified as section 503(a) of Title 17 of the United States Code, provides that the "court may order the impounding, on such terms as it may deem reasonable, of all copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced." As Attorney Bainton interprets this section, it authorizes a court to direct a private person employed by the plaintiff's attorney to "search" an alleged infringer's premises, seize the materials specified in section 503(a), and deliver them to the attorney. The private person, says Bainton, also may be directed to seize and deliver to plaintiff's attorney all books, records, correspondence or other documents related to the alleged infringing materials or which may provide information respecting the vendors or purchasers of the said materials. Plaintiff's attorney describes this portion of the order as an "accelerated discovery."

Bainton argues in support of these contentions that the Supreme Court's Rules of Practice are "void" and "no longer in effect." However, neither the Supreme Court nor Congress has said so. When section 25(e) of the 1909 Act was repealed in 1948, Pub.L. No. 773, 62 Stat. 869, 996, the 1948 Act specifically provided that it did not repeal any rules of procedure theretofore prescribed by the Supreme Court. 62 Stat. at 961. This provision has been retained in 28 U.S.C. § 2072. The consensus of knowledgeable authorities is that the Supreme Court's Rules have not been repealed. *See, e.g.,* 4 Wright, *Federal Practice and Procedure,* 2d ed. § 1018; 2 *Moore's Federal Practice* ¶ 1.03[3] (2d ed.); 3 *Nimmer on Copyright,* 14.07 (1988); 6A *Federal Procedural Forms* § 17:61–17:68 (1987); Owens, *Impoundment Procedures Under the Copyright Act: The Constitutional Infirmities,* 14 Hofstra L.Rev. 211, 213 (1985); Note, *Pretrial Remedies in Infringement Actions: The Copyright Holder's Impound of Flesh?* 17 Santa Clara L.Rev. 885, 897 (1977). Warner's reliance on *WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132 (D.D.C.1984), as authority for the proposition that Copyright Rules 4, 5 and 6 have been repealed is misplaced. That case involved a controverted motion and hearing for impoundment, not the expedited seizure to which Rules 4, 5 and 6 are addressed.

■ Even if we assumed that the Supreme Court Rules were no longer in effect, we would hold, nonetheless, that the procedure followed by Warner's attorney, which appears to be his customary mode (677 F.Supp. at 750), is improper. The remedies for infringement of copyright "are only those prescribed by Congress." *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 431, 104 S.Ct. 774, 783, 78 L.Ed.2d 574 (1984) (quoting *Thompson v. Hubbard,* 131 U.S. 123, 151, 9 S.Ct. 710, 720, 33 L.Ed. 76 (1889)). Although Congress provided in the 1909 Act that infringing articles might be impounded, it did not state how this was to be accomplished. Instead, it delegated the establishment of procedures to the Supreme Court, which promulgated the Copyright Rules. Absent such Rules, a court that is directed to order a seizure must proceed under the general rules governing preliminary injunctive relief. *See* Fed.R. Civ.P. 1 and Copyright Rule 1. There is nothing in the general rules, however, that authorizes the procedures followed by Warner's attorney.

■ Fed.R.Civ.P. 65 prescribes the method for securing preliminary injunctive relief, but specifically provides that "no preliminary injunction shall be issued without notice to the adverse party." While Rule 65 permits the grant of a temporary restraining order without notice, such an order, as is indicated by the very word "restraining", should issue only for the purpose of preserving the status quo and preventing irreparable harm and for just so long as is necessary to hold a hearing. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 439, 94 S.Ct.

1113, 1124, 39 L.Ed.2d 435 (1974). "The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n*, 306 F.2d 840, 842–43 (2d Cir. 1962). An order issued without notice directing an agent of plaintiff's attorney to search a defendant's premises, seize goods, documents and records and deliver them to the attorney, is not an order aimed at maintaining the status quo. *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir.1980); *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1180–82 (3d Cir.1976); *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir.1940).

In his application to Judge Sofaer, Warner's attorney suggested that Fed.R.Civ.P. 64 provided authority for the seizure he requested. Counsel has abandoned that argument in this Court. Rule 64 makes no provision for impoundment but does provide for prejudgment seizure of property for purposes such as attachment or sequestration. The Rule provides, however, that, where the remedy is not governed by a federal statute, it shall be provided under the circumstances and in the manner of the state in which the district court is sitting. *See Baxter v. United Forest Products Co.*, 406 F.2d 1120, 1125–26 (8th Cir.), *cert. denied*, 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed. 2d 42 (1969); *Lechman v. Ashkenazy Enterprises, Inc.*, 712 F.2d 327, 329–30 (7th Cir.1983). There is no New York statute or rule governing impoundment. The most nearly analogous New York statute is the one governing attachment, C.P.L.R. § 6211, which provides for the order of attachment to be directed to the sheriff. *Fireman's Fund Ins. Co. v. D'Ambra*, 766 F.2d 95, 97 (2d Cir.1985).

When the Supreme Court provided in Rules 4 and 5 that the writ of seizure should be issued to and executed by a marshal, it adopted a rule widely and wisely used in both civil and criminal cases. *See, e.g., Gumbel v. Pitkin*, 124 U.S. 131, 144–45, 8 S.Ct. 379, 383–84, 31 L.Ed. 374 (1888); *Lammon v. Feusier*, 111 U.S. 17, 4 S.Ct. 286, 28 L.Ed. 337 (1884); *Covell v. Heyman*, 111 U.S. 176, 178–82, 4 S.Ct. 355, 356–58, 28 L.Ed. 390 (1884); *Leonard v. United States*, 6 F.2d 353, 355 (1st Cir. 1925); 18 U.S.C. § 3105. "The general rule of law requires that certain officers execute search warrants...." 1 Varon, *Searches, Seizures and Immunities* chap. VIII at 502 (2d ed.). It is instructive to compare the seizure procedures followed in the instant case with those permitted under the Trademark Act, which, Bainton says, are "constitutionally indistinguishable." The Trademark Act provides that seizures shall be effected by a "United States marshal or other law enforcement officer" and that the material seized "shall be taken into the custody of the court." 15 U.S.C. § 1116(d)(9) and (d)(7).

One obvious reason for the use of a public officer such as a marshal is the likelihood that an attempt by a private person to make a search and seizure will be met with resistance from the person whose privacy is being invaded.

> The proceedings upon search warrants should be strictly legal, for there is not a description of process known to the law, the execution of which is more distressing to the citizen. Perhaps there is none which excites such intense feeling in consequence of its humiliating and degrading effects.

*Giles v. United States*, 284 F. 208, 212 (1st Cir.1922) (quoting Archbold's, *Criminal Practice and Pleading* 131). Not all property owners are as easily cowed as Mrs. Cho, a small, middle-aged Oriental woman, who could barely speak English. The Supreme Court undoubtedly had the possibility of resistance in mind when it provided in Rule 5 that the marshal effecting service might use "such force as may be reasonably necessary in the premises."

Another compelling reason for the use of a public officer is that tradition and established law dictate that such drastic acts as seizure and impoundment be conducted by neutral and impartial persons. *See Midway Mfg. Co. v. Omni Video Games, Inc.*, 668 F.2d 70, 72 (1st Cir.1981); *Matter of Hyde v. Hyde*, 87 Misc.2d 14, 17, 384 N.Y.S.

2d 639 (1976). Mr. Bainton was anything but that. *See Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 805–09 and nn. 13–17, 107 S.Ct. 2124, 2136–38 and nn. 13–17, 95 L.Ed.2d 740 (1987); *see also United States ex rel. Vuitton et Fils S.A. v. Klayminc,* 780 F.2d 179, 186–89 (2d Cir.1985) (Oakes, J., dissenting).

Finally, some courts have expressed the belief that when entry upon premises for the purpose of seizing goods and chattels by virtue of a judicial writ such as attachment or execution is made by a sheriff or other officer of the law, many Fourth and Fifth Amendment problems may be avoided. *D'Angelo v. Petroleos Mexicanos,* 378 F.Supp. 1034, 1037–38 (D.Del.1974) (quoting *Boyd v. United States,* 116 U.S. 616, 624, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886)).

■ For all of the foregoing reasons, we agree with Judge Wyatt that the seizure conducted by Warner's attorneys and their agents was improper. We also agree that the "search" conducted by the agents was not authorized by 17 U.S.C. § 503, and that the "discovery" of defendants' documents and records without notice was not authorized by either section 503 or Fed.R.Civ.P. 34. *See American Can Co. v. Mansukhani,* 742 F.2d 314, 323–24 (7th Cir.1984).

■ Judge Wyatt made numerous findings of fact which led him to conclude that the action was conducted in a "vexatious", "oppressive" and "unreasonable" manner. 677 F.Supp. at 771–73. These factual findings were not clearly erroneous, and they fully supported Judge Wyatt's conclusions. Moreover, the overall history of the litigation, as summarized by Judge Wyatt, *id.* at 770–74, amply justified his decision to award Warner only $100 in damages and to deny it attorneys' fees in toto.

Statutory damages are awarded when no actual damages are proven or they are difficult to calculate. *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231, 73 S.Ct. 222, 224, 97 L.Ed. 276 (1952). In making a statutory award, the court may consider the likelihood of profits and losses and may take into account the attitude and conduct of the parties. *Boz Scaggs Music v. KND Corp.,* 491 F.Supp.

908, 914–15 (D.Conn.1980); *L & L White Metal Casting Corp. v. Cornell Metal Specialties Corp.,* 353 F.Supp. 1170, 1176 (E.D. N.Y.1972); *see MCA, Inc. v. Wilson,* 677 F.2d 180, 187 (2d Cir.1981). Judge Wyatt took all of these factors into consideration and did not abuse his discretion in limiting Warner's award to $100. 17 U.S.C. § 504(c)(2).

■ The Copyright Act, 17 U.S.C. § 505, also provides that a court in its discretion may award a reasonable attorneys' fee to the prevailing party. Generally, the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 122 (8th Cir.1987). A party's success on a claim that is "purely technical or *de minimis*" does not qualify him as a "prevailing party." *Texas State Teachers Ass'n v. Garland Independent School District,* —— U.S. ——, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989).

Viewed in the light of the litigation as a whole, *Roth v. Pritikin,* 787 F.2d 54, 57 (2d Cir.1986), neither Warner's nor Dae Rim's success was sufficiently significant to mandate an award of attorneys' fees. Warner sued for infringement of both the "Gizmo" and "Stripe" copyrights. Its withdrawal of the latter claim in effect made the defendants the prevailing parties on that issue. *Corcoran v. Columbia Broadcasting System,* 121 F.2d 575 (9th Cir.1941). Moreover, although Warner obtained a permanent injunction against future infringement of the "Gizmo" copyright, the Chos had offered to consent to the entry of a permanent injunction long before the trial began. Finally, Warner's efforts to prove that the Chos were willful infringers so as to justify a substantial award of statutory damages were unsuccessful. Defendants' affirmative efforts did not fare much better. They counterclaimed, asserting that Warner's copyrights were invalid, but, after conducting discovery, they withdrew that claim. They also sought damages for the alleged

unlawful issuance of the temporary restraining order, but no award was made.

In any event, the determination as to which party has "prevailed" does not per se control the awarding of attorneys' fees. In the district court's discretion, fees need not be awarded if the award would not vindicate underlying statutory policies or it would be inequitable. *See Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 155 (3d Cir.1986); *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir.1987).

In the instant case, the defendants litigated in good faith against unreasonable demands for damages and attorneys' fees. *See Triumph Hosiery Mills, Inc. v. Triumph International Corp.*, 308 F.2d 196, 199 (2d Cir.1962). Warner asserts on the other hand that it pursued the litigation to create a deterrent against future infringements. *See Grosset & Dunlap, Inc. v. Gulf & Western Corp.*, 534 F.Supp. 606, 609–10 (S.D.N.Y.1982). A balancing of all the factors, with due regard to the heavier burden imposed upon defendants who seek fees, *Roth v. Pritikin, supra,* 787 F.2d at 57, leads us to conclude that neither side should be awarded attorneys' fees.

We have considered Warner's remaining arguments and find them to be without merit.

We turn now to the troublesome matter of the Bainton appeal. Because Mr. Bainton is not a novice in the legal field, we assume that he is familiar with the standards and rules under which lawyers practice their profession. This being so, his frequent disregard of those rules and standards cannot be condoned. We have already commented upon some of the acts of counsel in the district court that led to Judge Wyatt's criticism. 677 F.Supp. at 771–72. However, counsel's irresponsible acts did not terminate with the entry of judgment.

■ Section 1291 of Title 28 U.S.C. provides that appeals to this Court may be taken from "final decisions" of the district courts. The words "final decisions" mean the same thing as "final judgments and decrees." *Ex parte Tiffany,* 252 U.S. 32, 36, 40 S.Ct. 239, 241, 64 L.Ed. 443 (1920).

An appeal does not lie from a district court's opinion. *Silverman v. United States,* 556 F.2d 655, 656 (2d Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 484, 54 L.Ed.2d 315 (1977); *United States v. Collins,* 300 F.2d 821, 822 n. 1 (1st Cir.), *modified on other ground,* 303 F.2d 142 (1962); *Wright v. Gibson,* 128 F.2d 865 (9th Cir. 1942). Absent permitted intervention, Attorney Bainton, who was not a party to the action below and who was not aggrieved by the district court's judgment, had no right at all to appeal. *Matter of Leaf Board of Tobacco Trade,* 222 U.S. 578, 32 S.Ct. 833, 56 L.Ed. 323 (1911); *Shatah v. Shearson/American Express, Inc.,* 873 F.2d 550, 551 (2d Cir.1989); *Hispanic Society v. New York City Police Dep't,* 806 F.2d 1147, 1152–54 (2d Cir.1986); *cf. Deluca v. Long Island Lighting Co.,* 862 F.2d 427, 429 (2d Cir.1988) (attorney is proper appellant where district court's award of sanctions runs only against attorney). Attorney Bainton had no right to appeal "from so much of the opinion of the District Court reported at 677 F.Supp. 740 (S.D.N.Y.1988) as finds that he violated Rule 11 of the Federal Rules of Civil Procedure."

Bainton's transgressions in this Court did not end with the filing of his personal notice of appeal. At pages 13–14 of his brief in this Court, he quotes a statement allegedly made by defendants' attorney, which the district court refused to admit into evidence. Although Bainton does not contend that the district court erred in so ruling, Bainton quotes the statement and says unequivocally that it was made. His attempt to justify this patently improper conduct by reference to Fed.R.Evid. 103(a) (2) is without merit.

■ Although no transcript was made of the ex parte hearing before Judge Sofaer and no affidavits concerning what occurred at that hearing were filed, Bainton "represent[s]" in his brief exactly what occurred —what he said and did and what Judge Sofaer said and did. This representation hardly could have been made in innocent ignorance. The merest novice in the law knows that "[f]actual statements contained in a party's brief are not a part of the

record." *Matter of Frank Fehr Brewing Co.*, 268 F.2d 170, 183 (6th Cir.1959); *see Bono v. United States*, 113 F.2d 724, 725 (2d Cir.1940). To compound the impropriety of the description of events in Warner's original brief, Bainton states in his reply brief that "[a]ppellants have shown that Judge Sofaer read the affidavit and examined the bogus material."

Bainton states that defendants purchased a new home in Connecticut and, as authority for this statement, he refers to "Appellants' Request to take Judicial Notice—Second Set, No. 1." Bainton's failure to show that the district court took judicial notice of this alleged fact leads us ineluctably to the conclusion that the district court did not do so. If this is so, the statement in appellant's brief that the defendants had purchased a house is simply another improper attempt to get unproven and irrelevant "facts" before this Court.

■ Warner's briefs contain over 150 case citations, 21 of which deal with alleged but unreported interlocutory orders in cases identified only by name and docket numbers. In his Memorandum of Law submitted to Judge Sofaer, Attorney Bainton cited over 50 similarly unreported proceedings. This Court has no rule prohibiting the citation of unreported opinions. However, for a citation to have precedential value, it should be of a "deliberate or solemn decision of a court or judge, made after argument on a question of law fairly arising in a case, and necessary to its determination." *Beals v. Fontenot*, 111 F.2d 956, 959 n. 6 (5th Cir.1940) (quoting Chamberlayne, *Stare Decisis* 19). The doctrine of stare decisis is limited to actual determinations in respect to litigated and necessarily decided questions, *United States v. Furey*, 491 F.Supp. 1048, 1069 (E.D.Pa.1980) (quoting *Black's Law Dictionary* 1577–78 (4th ed.1968). Bainton cites to court files for cases litigated or in the process of litigation, not to final adjudications of controverted issues. Such tactics make a farce and mockery of the entire briefing and legal memorandum process and place an intolerable and almost insurmountable burden on both opposing counsel and the Court. We are not informed which, if any, of the cited cases were finally adjudicated and what questions, if any, were considered by the adjudicating court. *See Armstrong v. McAdams*, 46 F.2d 931, 933 (8th Cir.1931). Questions that lurk in an undisclosed record have no value whatever as precedents. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979); *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37–38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). Warner's experienced attorney must have known that his excessive string-citation of unreported district court proceedings containing undisclosed ex parte orders was improper.

■ In short, in this Court, as well as in the district court, Attorney Bainton has demonstrated a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly. An obligation is imposed on this Court to exercise its disciplinary powers to deter such happenings in the future. *See In re Hartford Textile Corp.*, 659 F.2d 299, 305–06 (2d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); *Browning Debenture Holders' Committee v. DASA Corp.*, 605 F.2d 35, 40–41 (2d Cir.1978); *Der–Rong Chour v. INS*, 578 F.2d 464, 467 (2d Cir.1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979); *Ruderer v. Fines*, 614 F.2d 1128, 1132–34 (7th Cir.1980); *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987); 28 U.S.C. §§ 1912, 1927; Fed.R.App. P. 38. Accordingly, we impose on Attorney Bainton alone double costs for the appeals taken by both him and Warner and damages against Bainton alone in the sum of $1,000.

To summarize: the part of the judgment that awards $100 in damages to Warner Bros. Inc. and denies it attorneys' fees is affirmed; the part of the judgment that awards $38,498.61 in attorneys' fees to Dae Rim Trading, Inc. and Yun Yon Cho is reversed; the appeal of J. Joseph Bainton is dismissed; double costs in both appeals together with damages in the amount of $1,000 are awarded to the defendants

against appellant J. Joseph Bainton; no other costs are awarded to any party.