**In re SOUTHEAST BANKING CORP.
SECURITIES AND LOAN LOSS
RESERVES LITIGATION.**

**No. 92–1600–CIV.**

United States District Court,
S.D. Florida.

Aug. 1, 1997.

J. Joseph Bainton, Ross & Hardies, New York City, for William A. Brandt, Jr.

Stuart Baskin, Shearman & Sterling, New York City, for Outside Directors.

Walter C. Carlson, Sidley & Austin, Chicago, IL, for Moeller.

Robert W. Clark, MacFarlane Ausley Ferguson & McMullen, Tampa, FL, for RTC.

C. Harris Dittmar, Bedell Dittmar Devault & Pillans, Jacksonville, FL, for Charles D. Towers.

R. Thomas Farrar, Holland & Knight, Miami, FL, for Ernst & Young.

Thomas Meeks, Zuckerman Spaeder Taylor & Evans, Miami, FL, Michael R. Smith, King & Spalding, Atlanta, GA, for Porta, Hill, Hudak, Milne.

Michael Nachwalter, Brian F. Spector, Kenny Nachwalter Seymour, Miami, FL, Jerome G. Snider, Davis Polk & Wadwell, New York City, for Charles Zwick.

Aaron S. Podhurst, Podhurst Orseck & Josefsberg, Miami, FL, for Outside Directors.

Hy Shapiro, Hogan, Greer & Shapiro, Miami, FL, for Dorothy Weaver.

W. Sidney Davis, Jr., Susan C. Cockfield, Davis Scott Weber & Edwards, Miami, FL, for Deloitte & Touche.

### ORDER ADOPTING REPORT AND RECOMMENDATION

EDWARD B. DAVIS, Chief Judge.

THIS MATTER is before the Court on the Officers and Directors' Emergency Motion to Dismiss and for Monetary Sanctions (D.E.366). On June 25, 1996, Magistrate Judge Garber issued a Report recommending that this Court (1) grant Defendants' Motion for Dismissal and Sanctions and (2) dismiss this cause with prejudice. After reviewing the par-

ties' filings and hearing oral argument, the Court ADOPTS Magistrate Judge Garber's Report and Recommendation in its entirety, and specifically emphasizes these findings.

## I. The Trustee and his Counsel Willfully Violated Court Orders and Engaged in Abusive Litigation Practices

The Court finds Plaintiff and his counsel willfully violated this Court's orders through the following actions:

1) On July 26, 1993, Plaintiff and his counsel served Bankruptcy Rule 2004 subpoenas on Steel Hector & Davis and Deloitte & Touche, in violation of this Court's order entered July 21, 1993 (staying discovery).

2) On January 5, 1994, Plaintiff and his counsel served Bankruptcy Rule 2004 subpoenas on Lazard Freres, in violation of the Court's orders entered July 21, 1993, August 16, 1993, and October 12, 1993 (staying discovery).

3) On February 24, 1994, Plaintiff and his counsel served Bankruptcy Rule 2004 subpoenas on Shearman & Sterling, in violation of the Court's orders entered July 21, 1993, August 16, 1993, and October 12, 1993 (staying discovery).

4) On April 29, 1994, Plaintiff and his counsel continued to pursue discovery through the enforcement of Bankruptcy Rule 2004 subpoenas against Shearman & Sterling, in violation of the Court's orders of July 21, 1993, August 16, 1993, October 12, 1993, and March 17, 1994 (staying discovery).

5) Plaintiff and his counsel made various prejudicial statements relating to documents whose use had been barred by this Court and which appeared in the May 2, 1996 edition of the *Miami Daily Business Review,* in violation of the Court's order entered April 5, 1996 (restricting Plaintiff and his counsel's use of these documents, including disclosure, directly or indirectly, to the media).

In addition to these willful violations of Court orders, Plaintiff and his counsel have engaged in abusive litigation practices. For example, the Court has previously found that Plaintiff and his counsel pursued discovery with *no good faith basis* for doing so. *See* Order entered August 3, 1994. More recently, Magistrate Judge Garber found that Plaintiff and his counsel improperly obtained certain privileged documents from the FDIC, but continued to litigate the turnover proceedings and concealed their actions. *See* Order entered June 25, 1996, Case No. 95–2602–CIV–DAVIS.

## II. Lesser Sanctions Will Not Suffice

 Although the Court has not previously imposed sanctions on Plaintiff or his counsel, neither the federal rules nor this Court's inherent authority require the Court to impose lesser sanctions than dismissal when these sanctions would be ineffective. *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1544 (11th Cir.1993). Moreover, the Court has given Plaintiff and his counsel numerous warnings throughout this litigation:

1. After Plaintiff and his counsel had violated the Court's July 21, 1993 order staying discovery, Judge Aronovitz cautioned them, "This Court reserves ruling specifically on whether or not to issue sanctions." *See* Order entered August 16, 1993.

2. At a hearing on Defendants' Motion for Sanctions, Magistrate Judge Johnson informed Plaintiff and his counsel that she would be issuing a report recommending sanctions for their violations of the Court's March 17, 1994 order. *See* January 26, 1995 Transcript, Magistrate Judge Johnson at 71–73.[1]

3. After ordering Plaintiff and his counsel not to disclose nor utilize directly or indirectly privileged post-closing documents, Magistrate Judge Garber warned, "Any violation of this provision **shall result in the imposition of sanctions.**" *See* Order entered April 5, 1996 (emphasis in original).

Plaintiff and his counsel's misconduct in this case and other litigation gives no indication

---

1. Although Magistrate Judge Johnson later recused herself and did not issue a report on this matter, the Court finds her remarks sufficiently warned Plaintiff and his counsel that their conduct warranted the imposition of sanctions.

to this Court that lesser sanctions would be effective. Moreover, the Court notes that the Trustee himself violated this Court's orders, and despite closely supervising his counsel's handling of this litigation, failed to curb his counsel's misconduct.[2]

### III. Defendants Were Prejudiced by the Actions of Plaintiff and his Counsel

The Court finds Plaintiff and his counsel's misconduct and penchant for satellite litigation has prejudiced Defendants in that they have suffered delay in attempting to clear their names. Furthermore, Plaintiff and his counsel's misconduct has interfered with this Court's ability to effectively resolve this litigation, as well as the other cases the Court is charged with overseeing. *See Mobley v. McCormick,* 160 F.R.D. 599, 601 (D.Colo.), *aff'd,* 69 F.3d 548 (10th Cir.1995).

### *CONCLUSION*

Accordingly, it is

ORDERED AND ADJUDGED that the Officers and Directors' Emergency Motion to Dismiss and for Monetary Sanctions is GRANTED. This case is DISMISSED WITH PREJUDICE. This case is CLOSED. All pending motions not specifically addressed are DENIED AS MOOT. The Court retains jurisdiction to determine the appropriate amount of attorneys' fees and costs. These issues are REFERRED to Magistrate Judge Garber for an evidentiary hearing.

### *REPORT AND RECOMMENDATION*

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court on the Officer and Director Defendants' Emergency Motion to Dismiss and for Monetary Sanctions (DE 366) filed in Case No. 92–1600–CIV–Davis which has been consolidated with other cases relating to the parties and SOUTHEAST BANK. All of the consolidated cases have been designated as Multi District Litigation and bear the number MDL DKT.

No. 1000. The motion now before the Court, based upon its allegations of wrongdoing and unethical conduct by the Plaintiff, Trustee William A. Brandt, Jr., and his attorney J. Joseph Bainton, necessarily impacts upon on all of the consolidated cases in this Multi–District Litigation.

### *BACKGROUND*

Southeast Bank, N.A. ("Southeast"), a bank holding company as defined under 12 U.S.C. § 1841, operated a number of banks and related businesses throughout the state of Florida. On September 20, 1991, Southeast filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

This cause is a consolidated action commenced by William A. Brandt, Jr., as Trustee of Southeast ("Plaintiff") as a result of his investigation into the activities and events that led to the ultimate problems at Southeast and the alleged subsequent failure to engage in efforts to maximize the assets of the Receivership Estate prior to final distributions to Southeast's creditors, depositors, and shareholders. Defendants in this cause are Southeast's former Directors and Officers ("Defendant Directors and Officers"), the Federal Deposit Insurance Corporation ("Defendant FDIC"), Resolution Trust Corporation, Deloitte & Touche, Ernst & Young, and others.

In the Complaint (Case No. 92–1600), Plaintiff alleges that Defendant Directors and Officers breached their fiduciary duty to the bank by acting with a conscious disregard of the best interests of Southeast by engaging in conduct intended to perpetuate their respective positions as directors and officers of Southeast. Plaintiff also alleges, in another consolidated Complaint (Case No. 95–2602), that Defendant FDIC, as well as other parties, breached their fiduciary duty to Southeast's creditors, depositors and shareholders by failing to investigate and pursue outstanding claims held by Southeast

---

**2.** *See Brandt v. Schal Assoc.,* 960 F.2d 640 (7th Cir.1992); *Warner Bros., Inc. v. Dae Rim Trading*

*Inc.,* 877 F.2d 1120, 1128 (2d Cir.1989).

in an effort to maximize the recovery of assets to the Receivership Estate.

Defendant Directors and Officers' Emergency Motion to Dismiss and for Monetary Sanctions (DE 366) is based upon actions of Plaintiff and his attorney, Mr. J. Joseph Bainton, beginning on September 23, 1992, when this Court entered an order withdrawing its Order of Reference to the Bankruptcy Court and ordering that all further proceedings were to take place in the U.S. District Court. (DE 32). Mr. Bainton appears before this Court by a grant of his motion seeking *pro hac vice* status.

On July 21, 1993, this Court dismissed Plaintiff's initial complaint and stayed discovery pending the filing of an Amended Complaint and disposition of motions directed to the Amended Complaint. (DE 117 at 4). Less than one week later, on July 26, 1993, Plaintiff served Bankruptcy Rule 2004 subpoenas on Steel, Hector & Davis and Deloitte & Touche, prompting Defendants to file a Motion for Order Directing Trustee's Compliance with this Court's Orders of September 23, 1992 and July 21, 1993. (DE 119). On October 12, 1993, the Court ruled that the earlier discovery stay was still in effect, that Plaintiff could pursue alternative means of discovery in the form of agreements already in place between the parties, and that the Federal Rules of Civil Procedure, not the Bankruptcy Rules, control in this matter. (DE 146).

On February 24, 1994, Plaintiff again served Bankruptcy Rule 2004 subpoenas on Shearman & Sterling and Lazard–Freres, again necessitating Defendants to file a Motion for Order Directing Plaintiff's Compliance with this Court's past orders relating to the stay of discovery in this cause. (DE 189). This Court entered an order on March 17, 1994, stating inter alia that the, "use of Bankruptcy Rule 2004 subpoenas constituted an end-run attempt to avoid compliance with the Court's stay of discovery orders." (DE 199). Further, this Court ruled that "the discovery stay applies to the Rule 2004 subpoena served on Shearman & Sterling, that all discovery is to be conducted in this Court pursuant to the Federal Rules of Civil Procedure, and lastly that the stay of discovery is to remain in effect pending a hearing on the Second Amended Complaint." The Court also invited Defendants to seek sanctions for Plaintiff's repeated violations of past court orders. (DE 199 at 2–3).

On April 6, 1994, the FDIC filed a Motion for Order Directing Compliance with this Court's Order Staying Discovery (DE 213) after Plaintiff commenced an action in Bankruptcy Court (Case No. 94–232) seeking discovery of documents from the FDIC. On April 7, 1994, this Court entered an order granting the FDIC's motion and staying discovery in the Bankruptcy action. (DE 214). On April 25, 1994, this Court entered a subsequent order (DE 232) reaffirming the stay of discovery in Bankruptcy Case No. 94–232.

On April 29, 1994, Plaintiff reinstituted in Bankruptcy Court a Motion to Enforce Rule 2004 Subpoena and to Hold Shearman & Sterling in Contempt, which led to Defendants' filing an Emergency Motion for Order Directing Plaintiff's Compliance with past Court Orders, Granting a Protective Order and Quashing Discovery Directed to Shearman & Sterling. (DE 264). On June 21, 1994, the Court entered an order in which it found that "the documents sought by the Shearman & Sterling subpoenas relate either directly or indirectly to this case." (DE 271). This Court then enjoined Plaintiff from "seeking discovery through the use of Rule 2004 subpoenas on matters that relate or may relate to allegations in Plaintiff's Second Amended Complaint including the Shearman & Sterling subpoena." (DE 271 at 1).

After Plaintiff filed a Motion Seeking Expedited Discovery from Shearman & Sterling, this Court entered an order denying said motion on August 3, 1994, in which it held that "no good faith basis exists for taking discovery of Shearman & Sterling." (DE 284). Following this order, Plaintiff, on October 28, 1994, served another Bankruptcy Rule 2004 subpoena on Shearman & Sterling, prompting Defendants to file a Motion for Sanctions and Fines on Plaintiff and Rescinding *Pro Hac Vice* Admission for Failure to Comply with numerous Court Orders and Discovery Abuses. (DE 297). At a hearing on Defendants' motion, Magistrate Judge Linnea Johnson stated that she would be

recommending sanctions. However, Defendants' Motion for Sanctions (DE 297) was never ruled upon and remains pending before the undersigned since Magistrate Judge Johnson recused herself and vacated any oral statements she made regarding the appropriateness of the imposition of sanctions on the Plaintiff. (DE 349).

Subsequently, Plaintiff brought an action against Steel, Hector & Davis, Southeast's general counsel, in which the FDIC intervened, seeking access to the business records of Southeast, including the files of Steel, Hector & Davis. To avoid further litigation and in settlement of this adversary proceeding, Plaintiff and the FDIC entered into stipulations, agreements, and protective orders regarding the sharing of the *pre-closing* records. Such agreements were drafted to clarify the fact that the FDIC was sharing only *pre-closing* records, with all rights regarding ownership and privilege reserved and disputes with respect to the same deferred until notice of intended disclosure to a third party.

The FDIC, as part of its statutory responsibility, investigated the Banks' officers, directors, attorneys, accountants, and other third parties to determine whether it should pursue claims against those persons. As part of that investigation, the FDIC's staff and its counsel created many documents which evaluated various potential claims and referenced communications between the FDIC's investigators and attorneys. Such documents are referred to as post-closing documents. Not long after Southeast failed, Plaintiff asserted that he was entitled to access to the FDIC's *post-closing* privileged investigative documents. The FDIC immediately informed Plaintiff that under no circumstances would it turn over such documents. Plaintiff thereafter filed a turnover proceeding in Bankruptcy Court to compel the FDIC to surrender the post-closing documents (Case No. 95–2602).

In compliance with the existing agreements between the Plaintiff and the FDIC regarding the *pre-closing* documents, on November 28, 1994, Plaintiff and Plaintiff's agents and counsel were admitted to a warehouse in Atlanta to copy certain *pre-closing* documents that had previously been requested. During such inspection, Plaintiff, his agents and counsel discovered certain *post-closing* documents that had been inadvertently placed in the caged area along with the pre-closing documents. Upon such discovery, Plaintiff proceeded to copy substantially all of the *post-closing* documents despite the fact that these documents were clearly marked as confidential FDIC documents and despite the fact that the Plaintiff and the FDIC were engaged in highly contested litigation over Plaintiff's entitlement to those very same documents (DE 43).

Once the FDIC discovered that Plaintiff had come into possession of the post-closing documents, it made repeated unsuccessful demands for the return of the documents. Eventually, a compromise was reached pursuant to which the parties agreed that resolution of the claimed entitlement by the Plaintiff to keep, use or disclose the contents of any of the FDIC *post-closing* privileged documents would be deferred until such time as when the Trustee chose to attempt to use or disclose the documents. However, Plaintiff has threatened to disclose the information contained in the documents to the press and in the litigation against the FDIC despite the FDIC's claims of attorney-client privilege and work product. In fact, Plaintiff used the information contained in the post-closing documents in drafting his Second Amended Complaint against the FDIC, and submitted copies of some of the post-closing documents to the Court under seal, prompting the FDIC to file a motion seeking return of the *post-closing* documents.

In response to the FDIC's Motion Requiring Plaintiff to Return the Privileged Documents, this Court entered an Order on April 5, 1996 setting for hearing Defendant's Motion and in the interim, ordering Plaintiff, his employees and counsel not to

utilize, directly or indirectly, any of the Post–Closing Privileged Documents or the information contained therein for any purpose whatsoever until further order of this Court. Such documents or the information contained therein shall not be made available, directly or indirectly, to any third parties including, but not limited to the

media. Any such violation of this provision shall result in the imposition of sanctions. (DE 51 at 2). Subsequently, Plaintiff filed a Motion to File Under Seal Certain of the FDIC Post–Closing Documents, which this Court denied without prejudice. In its order on May 2, 1996, this Court reiterated the language of its April 5, 1996 order restricting Plaintiff's use of the FDIC post-closing documents (DE 68).

On May 2, 1996, various statements attributable to Plaintiff and his counsel appeared in the *Miami Daily Business Review.* The following are quotes taken from the article entitled "Trustee: I'd love to show smoking gun":

> Brandt, with characteristic understatement, alleges the boxes contain the smoking gun he needs to prove his wrongful conduct case against the FDIC and says he feels "like Daniel Ellsberg must have felt when he got his hands on the Pentagon papers."
>
> Bainton says the documents are enough to prove misconduct by Southeast Bank's board of directors. "Suppressing the FDIC documents would be like suppressing the gun in a murder investigation", he says.

Chris Boyd, *Trustee: I'd love to show smoking gun,* MIAMI DAILY BUSINESS REVIEW, May 2, 1996, at 1. These statements prompted Defendants to file an Emergency Motion to Dismiss the Action and for Monetary Sanctions (DE 366). A hearing on said motion was held before the Court on May 22, 1996.

### *DISCUSSION*

### *I. STANDARD OF REVIEW*

■ A district court is authorized, on motion, to dismiss an action for failure to prosecute or obey a court order or federal rule. Fed.R.Civ.P. 41(b). The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of legal actions. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962). "Federal courts have the inherent power to dismiss an action for misconduct that abuses

the judicial process and threatens the integrity of that process—including misconduct unrelated to the merits of the case." *Vargas v. Peltz,* 901 F.Supp. 1572, 1582 (S.D.Fla.1995). In invoking its inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133–2134, 115 L.Ed.2d 27 (1991). Dismissal is generally proper where less drastic sanctions would be ineffective. *Aztec Steel Co. v. Florida Steel Corp.,* 691 F.2d 480, 481–482 (11th Cir.1982), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983). "Although the standard of review on appeal is abuse of discretion, dismissal of an action with prejudice 'is a sanction of last resort, applicable only in extreme circumstances.'" *Jones v. Graham,* 709 F.2d 1457, 1458 (11th Cir.1983) (quoting *EEOC v. First National Bank,* 614 F.2d 1004, 1007 (5th Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981)).

■ "The legal standard to be applied under Rule 41(b) is whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" *Id.* (quoting *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980)). Willful, as used in the context of a failure to comply with a court order, implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance, and no wrongful intent need generally be shown. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 207–208, 78 S.Ct. 1087, 1093–1094, 2 L.Ed.2d 1255 (1958). Thus, "a party's simple negligence or other action grounded in a misunderstanding of a court order does not warrant dismissal." *E.E.O.C. v. Troy State University,* 693 F.2d 1353, 1357 (11th Cir. 1982). In addition, this Court does not take into account the probable merit of a litigant's case when imposing the sanction of dismissal. *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536. 1544 (11th Cir.1993), *cert.*

*denied,* 510 U.S. 863, 114 S.Ct. 181, 126 L.Ed.2d 140 (1993).

## II. APPLICATION OF LEGAL STANDARD

### A. Plaintiff and his Counsel's Willful Misconduct

Defendants argue that Plaintiff and his counsel have exhibited a continuing pattern of willful disregard for orders of this Court. Defendants detail how Plaintiff and his counsel, on six separate occasions, have violated orders of this Court, beginning on July 26, 1993, when they served the first Bankruptcy Rule 2004 subpoenas after this Court had entered an order on July 21, 1993 specifically staying discovery, and most recently, on May 2, 1996, when several statements made by the Plaintiff and his counsel relating to the FDIC Confidential Privileged Documents appeared in the Miami Daily Business Review after this Court on April 5, 1996 and on May 2, 1996 entered orders specifically restricting Plaintiff and his counsel's use of those very documents. Thus, Defendants assert that Plaintiff and his counsel's conduct since the commencement of this lawsuit establishes a *clear record* of willful contempt and disobedience of this Court's orders.

Plaintiff contends that Defendants have not met the heavy burden set forth in *Chambers* because (1) Plaintiff did not in good-faith believe he violated this Court's order restricting his use of the FDIC documents when he made certain statements to the Miami Daily Business Review, as he argues he did not disclose or discuss the contents of the FDIC documents, but merely expressed his view of their importance in the case against the FDIC; (2) Plaintiff did not "purloin" any documents from the FDIC, but merely photocopied documents he claims were voluntarily produced and that he has every right to possess in order to carry out his legal duty as trustee for the bank; and (3) Defendants' claims that Plaintiff's conduct in violating

past discovery orders of this Court is sanctionable by dismissal are unfounded because if true, Defendants would have pursued that course long ago, not one and one half years later (DE 366).

Defendants categorize four types of bad faith litigation tactics that warrant dismissal of an action. These include: (1) discovery abuses, *see e.g. Vargas v. Peltz,* 901 F.Supp. at 1581 (holding that the persistent pattern of misconduct committed by Plaintiff warrants dismissal of her case); (2) violation of court orders, *see e.g. Goforth v. Owens,* 766 F.2d 1533, 1534–1535 (11th Cir.1985) (finding that dismissal was proper where plaintiff's counsel engaged in a pattern of delay and deliberately refused to comply with the directions of the court); (3) failure to prosecute in a diligent manner, *see e.g. Link,* 370 U.S. at 630, 82 S.Ct. at 1388–1389; and (4) other bad faith or abusive conduct, *see Vargas,* 901 F.Supp. at 1581. Specifically applicable to this analysis is Plaintiff's and his counsel's continued violations of this Court's orders and discovery abuses. Where a party fails to comply with a court's discovery order, dismissal of the action under Fed.R.Civ.P. 37 is an appropriate sanction. *See Malautea,* 987 F.2d at 1544–1546; *Bass v. Jostens, Inc.,* 71 F.3d 237 (6th Cir.1995); *North American Watch v. Princess Ermine Jewels,* 786 F.2d 1447 (9th Cir.1986). Most recently, the 11th Circuit affirmed the dismissal of an action where the district court gave ample opportunities for claimants to comply with the court's orders, but where claimants nevertheless continually engaged in discovery abuse and failed to appear at scheduled depositions.[1] *United States v. Conqueror Corp.,* No. 95–4971 (11th Cir. April 25, 1996).

In this case, the Court on six separate occasions entered orders staying discovery pending the disposition of motions pertaining to Plaintiff's Complaint. On two occasions, this Court specifically ruled that Plaintiff's use of Rule 2004 subpoenas violated this Court's stay of discovery and enjoined Plain-

---

1. Specifically, the 11th Circuit found that "the district court gave claimant Conqueror ample warnings that it would consider dismissing its claim and striking its answer if Conqueror disobeyed discovery orders." *United States v. Conqueror Corp.,* No. 95–4971 (11th Cir. April 25, 1996). Therefore, the Court held that "[i]n light of Conqueror's repeated and willful failure to comply with the district court's discovery orders … it was not an abuse of discretion for the district court to dismiss Conqueror's claim." *Id.*

tiff from seeking to circumvent this Court's orders by engaging in discovery in Bankruptcy Court. (DE 271 and 284). Notwithstanding this Court's orders, Plaintiff and his counsel have continued to serve Rule 2004 subpoenas [2]. Plaintiff's most recent violation occurred on May 2, 1996, when Plaintiff and his counsel were quoted by the *Miami Daily Business Review* making statements pertaining to the FDIC privileged documents, which statements were in direct violation of this Court's order of April 5, 1996 restricting Plaintiff and his counsel's use of those very documents.

Plaintiff and his counsel's actions since the withdrawal of the order of reference to the Bankruptcy Court have been nothing short of willful and bad faith conduct. Time and time again this Court has sought to curb Plaintiff and his counsel's prejudicial conduct by drafting the most direct orders it could fashion. For example, in Judge Aronovitz's order of March 17, 1994, he stated that the use of Bankruptcy Rule 2004 subpoenas constituted an "end-run attempt to avoid compliance with this Court's stay of discovery orders." (DE 199). The language in the order clearly notified the Plaintiff that every time he serves a Bankruptcy Rule 2004 subpoena on a party who possesses information relating to this cause, he is violating this Court's past orders staying discovery. Plaintiff and his counsel responded to Judge Aronovitz's order by continuing to utilize Rule 2004 subpoenas. The undersigned thus finds that the conduct described herein constitutes a willful disregard and a clear violation of this Court's orders.

Defendants maintain that dismissal is appropriate in this case because of Plaintiff's continued, ongoing misconduct in the form of litigation abuse, fraud, and deception, creating irrevocable prejudice to the Defendants. This Court agrees. Based on the evidence supported by the record in this consolidated cause, this Court finds that Plaintiff and his counsel have willfully violated orders of this Court on six separate occasions:

1. Plaintiff and his counsel, on August 12, 1993, served Bankruptcy Rule 2004 subpoenas on Steel, Hector & Davis and Deloitte & Touche contrary to an order of this Court.

2. Plaintiff and his counsel violated this Court's original order staying discovery (DE 117), as well as two subsequent orders staying discovery (DE 123, 146) when Plaintiff and his counsel served a Bankruptcy Rule 2004 subpoena on Shearman & Sterling.

3. Plaintiff and his counsel violated this Court's order of March 17, 1994 staying discovery by their continued efforts to use Rule 2004 subpoenas.

4. Plaintiff and his counsel violated this Court's past orders by filing in Bankruptcy Court a Motion to Enforce Bankruptcy Rule 2004 subpoena on Shearman & Sterling.

5. Plaintiff and his counsel again violated this Court's past discovery orders when on October 28, 1994 they served another Bankruptcy Rule 2004 subpoena on Shearman & Sterling in direct violation of this Court's most order entered on June 21, 1994 enjoining the use of Rule 2004 subpoenas.

6. Plaintiff and his counsel violated this Court's order of April 5, 1996 restricting the utilization of privileged FDIC documents within the possession of Plaintiff and his counsel when Plaintiff and his counsel made various prejudicial statements relating to documents whose use had been barred by the Court and which appeared in the May 2, 1996 edition of the *Miami Daily Business Review.*

### B. Lesser Sanctions are not Appropriate in this Cause

A dismissal is appropriate where the record supports a finding that any lesser sanction than dismissal would fail to cure the harm that the attorney's misconduct would cause to the defendant. *Goforth,* 766 F.2d at 1535. However, absent a showing of a clear record of delay or contemptuous resistance

---

2. Plaintiff's last Rule 2004 subpoena was served on October 28, 1994 on Shearman & Sterling following this Court's order of August 3, 1994, in which this Court ruled that "no good faith basis exists for taking discovery of Shearman & Sterling" (DE 284).

to judicial authority by the plaintiff, the trial court's discretion is limited to the application of lesser sanctions designed to achieve compliance with the court's orders and expedite proceedings. *Ford v. Fogarty Van Lines, Inc.,* 780 F.2d 1582, 1582 (11th Cir.1986). "[A] default sanction may be proper even when not preceded by the imposition of lesser sanctions. When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Malautea,* 987 F.2d at 1544.

This Court makes clear in its orders of March 17, 1994, April 5 and May 2, 1996 that conduct contrary to that specified in its orders is sanctionable. Nevertheless, Plaintiff and his counsel willfully continued to violate this Court's orders. Thus, both Plaintiff and his counsel have demonstrated a clear disregard for this Court's less dispositive methods of compelling them to comply with this Court's orders.

Further, there is no evidence from the record that imposing an alternative or lesser sanction on Plaintiff and his counsel would curtail or deter their past practice of continually violating this Court's orders. Plaintiff's response to Defendants' allegations shows that imposing a lesser sanction would not accomplish the desired purpose. Plaintiff, in his response, does not attempt to explain how his conduct does not constitute a violation of this Court's past orders regarding the use of discovery, but instead states that his alleged violations of this Court's prior discovery orders are unfounded because if true, such violations would have prompted Defendants to move for sanctions when the alleged violations took place, not one and one half years later. In other words, Plaintiff does not argue that his conduct was proper, but instead argues that Defendants' allegations regarding his conduct are unfounded because Defendants did not promptly move for sanctions. However, Plaintiff's statement mischaracterizes the record. The record in this cause establishes that Defendants, as early

as August 12, 1993, sought Plaintiff's compliance with this Court's orders staying discovery by filing a Motion for Order Directing Trustee's Compliance with this Court's orders staying discovery. Further, Defendants, on four other occasions prior to the motion now before the Court, sought Plaintiff's compliance with this Court's prior discovery orders. Each time that Defendants appeared before this Court seeking a ruling on the stay of discovery, the Court reiterated the language of its past orders, giving Plaintiff and his counsel another opportunity to comply. From the Court's first order staying discovery on July 21, 1993, to the order on March 17, 1994 ruling that the use of Rule 2004 constitutes an end-run attempt to avoid compliance, to the order of June 20, 1994 enjoining the use of Rule 2004 subpoenas, to the order of August 3, 1994 ruling that no good faith basis exists for taking discovery of Shearman & Sterling, this Court continually refined the language in its orders as an alternative to sanctioning Plaintiff and his counsel for their conduct. Nevertheless, each attempt by this Court was met with the same result—Plaintiff and his counsel's continued use of Rule 2004 subpoenas to circumvent the discovery stay. Allowing this type of conduct to continue frustrates a fair and equitable disposition of this cause and only continues to prejudice the Defendants. Further, Defendants have already sought sanctions, including a rescission of Plaintiff's counsel's *pro hac vice* standing, which is considered in a separate order entered in Case no. 95–2602–CIV–DAVIS.

In its order of April 5, 1996, the Court made absolutely clear that it would not tolerate *any* use of the FDIC privileged post-closing documents pending the hearing on their return.[3] Nevertheless, less than one month later, statements by Plaintiff and his counsel referring to the very documents in this Court's order appeared in the *Miami Daily Business Review.* In Plaintiff's Post-Hearing Memorandum in Further Opposition to Defendants' Motion, he contends that

---

**3.** Specifically, this Court ordered Plaintiff, his counsel and his employees not to "utilize, directly or indirectly, any of the post-closing privileged documents or the information contained therein for any purpose whatsoever until further order of

this Court. Such documents shall not be made available, directly or indirectly, to any third parties including, but not limited to the media. Any such violation of this provision shall result in the imposition of sanctions." (DE 51 at 2).

statements made to the *Miami Daily Business Review* were made in good faith and not in violation of this Court's order of April 5, 1996 because he did not construe this Court's order as a "gag order," but instead reasonably construed the order to permit comment to the news media about the significance of the documents to his claim against the FDIC. These statements offer additional proof that Plaintiff and his counsel have demonstrated a conscious disregard for even the most direct orders that this Court can fashion. The Court cannot conceive of a more effective alternative of communicating its intentions to Plaintiff and his counsel. Plaintiff contends that he reasonably and in good-faith did not interpret the order to restrict communications "regarding the significance of the documents he possessed in his claim against the FDIC." (Trustee's Post Hearing Memorandum at 3).

It seems that Plaintiff's argument at each hearing before this Court for every violation of this Court's orders is that "he did not construe this Court's order to mean ..." Thus, it appears that Plaintiff and his counsel, Mr. Bainton, do not understand this Court's simplest and most direct orders. This Court finds that Plaintiff and his counsel's misconduct was willful, that it was unfairly prejudicial to Defendants in this cause, that they had been amply warned by this Court to comply with court orders, and that lesser sanctions would be unavailing. *See Bass,* 71 F.3d at 241–243.

Further, it is important to note that the conduct outlined above does not present the first instance of misconduct by either the Plaintiff or Mr. Bainton. In *Brandt v. Schal Associates, Inc.,* 960 F.2d 640, 644 (7th Cir. 1992), Plaintiff's attorney in that action was sanctioned for the filing of an unfounded and unsubstantiated racketeering claim. Also, in *Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1128 (2nd Cir.1989), the Second Circuit Court of Appeals ruled that "Attorney Bainton has demonstrated a blatant disregard for the rules and regulations

which permit the judicial machinery to function smoothly." [4]

Consequently, the undersigned finds that Plaintiff and his counsel have exhibited willful conduct in violating this Court's orders and that no alternative or lesser sanction exists that this Court could impose that would deter Plaintiff and his counsel's conduct and lessen the prejudice to the Defendants.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned hereby RECOMMENDS as follows:

1. That Defendants' Motion for Dismissal and for Monetary Sanctions be GRANTED and the cause be Dismissed with prejudice.

2. This Court finds that through Plaintiff and his counsel's repeated misconduct, Defendants have been put to an inordinate expense by way of attorney's fees and costs, which amounts should be reimbursed. Accordingly, the undersigned recommends awarding such amounts to be determined by the Court after an evidentiary hearing.

The parties have ten (10) days from the date of this Report and Recommendation within to file written objections, if any, with the Honorable Edward B. Davis, United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. den.,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

---

**4.** In the *Warner Bros.* case, Plaintiff's counsel, Mr. J. Joseph Bainton, was sanctioned for conducting an action in a vexatious, oppressive and unreasonable manner, for filing his own nonparty appeal from district court opinion, and for filing a brief which referred to nonrecord statements and contained excessive string citations of unreported district court proceedings containing undisclosed ex parte orders. *Warner Bros.,* 877 F.2d at 1121.