In re:  SOUTHEAST BANKING CORPORATION, Debtor.

Jeffrey H. Beck, as Trustee of Southeast Banking Corporation, Plaintiff-Appellant,

v.

 Florence S. Bassett, as Personal Representative of the Estate of Harry Hood Bassett, Donald N. Boyce, et al., Defendants-Intervenors—Defendants-Appellees.

No. 97-5483.

United States Court of Appeals,

Eleventh Circuit.

March 3, 2000.

Appeal from the United States District Court for the Southern District of Florida.(No. 92-01600-CV), Edward B. Davis, Chief Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and OWENS*, Senior District Judge.

BIRCH, Circuit Judge:

Plaintiff-Appellant Jeffrey H. Beck ("Beck"), as Trustee of Debtor Southeast Banking Corporation ("Debtor" or "Southeast"), appeals the district court's order dismissing the complaint against Defendants-Appellees ("Defendants"), who were directors and/or officers of Debtor.  Beck argues that the district court erred in dismissing this case as a sanction for discovery violations.  We REVERSE and REMAND for consideration and implementation of less harsh sanctions.

*I. Background*

On June 17, 1992, William A. Brandt ("Brandt"), then Trustee of Debtor, filed an adversary proceeding against Defendants in bankruptcy court pursuant to a bankruptcy reference of all cases related to Debtor's estate.  *See* R1-1-2 at WW 1-2.  On June 24, 1992, Brandt filed a motion to withdraw the reference as to the adversary proceeding against Defendants.  *See* R1-1.  On September 22, 1992, the district court[1]

---

*Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia, sitting by designation.

[1]The late Judge Sidney Aronovitz had this case from its filing until May 4, 1994, when it was transferred to Judge Edward Davis, as part of a Multi-District Litigation ("MDL") consolidation.  Judge Davis referred the case to Magistrate Judge Linnea R. Johnson, who recused herself on October 10, 1995.  *See* R14-349

granted Brandt's motion to withdraw the reference as to the adversary proceeding against Defendants ("September 1992 Order"). *See* R2-32-2 (stating that the district court withdraws the reference and "hereby takes jurisdiction of this alleged non-core jury case"). This adversary proceeding is the case now before us. On July 22, 1993, the district court granted Defendants' motions to dismiss, *see* R5-117, but gave Brandt leave "to amend his Complaint to state more specifically and succinctly" his direct claims, i.e., claims not founded on derivative liability, R5-117-4. As part of the order dismissing Brandt's initial complaint ("July 1993 Order"), the district court stated: "Until the Amended Complaint is filed, and attacks on the Amended Complaint, if any, are heard, discovery is hereby STAYED, so that the proper scope of discovery may be first determined." R-1-17.

On July 26, 1993, less than a week after the district court dismissed the initial complaint and stayed discovery, Brandt issued Bankruptcy Rule 2004 subpoenas "on two likely third party witnesses in the present action—Southeast's former lawyers, Steel Hector & Davis ... and former accountants, Deloitte & Touche" (collectively, "July 1993 Subpoenas"). R5-119-3-4. Defendants filed a motion to compel Brandt to comply with the court's September 23, 1992 and July 22, 1993 orders; this motion argued that the Rule 2004 subpoenas "represent an obvious attempt by the Trustee to circumvent the Court's Omnibus Order which explicitly stayed discovery and dismissed the derivative claims related to the Bank" and that the subpoenas likewise were "in contravention of the September 23, 1992 Order of this Court assuming jurisdiction of this non-core jury case." R5-119-5. On August 16, 1993, the district court issued an "Order Again Staying Discovery" ("August 1993 Order").[2] R6-123. In the August 1993 Order, the district court stated that it "reinforces its July 21, 1993 Omnibus Order staying all discovery," and that "[a]ny and all notices of any kind

---

(vacating any oral statements that she had made indicating that sanctions were appropriate). The case was referred to Magistrate Judge Barry L. Garber, who ultimately recommended that the case be dismissed for discovery violations.

[2]Judge Aronovitz handwrote the word "Again" into the Order's caption and underscored it for emphasis. *See* R6-123.

of discovery whatsoever shall be stayed, *nunc pro tunc,* effective July 21, 1993." R6-123-2. The district court reserved ruling on the question of sanctions. R6-123-2.

On September 23, 1993, the district court held a hearing about the July 1993 Subpoenas. At this hearing, J. Joseph Bainton ("Bainton"), counsel for Brandt, stated that Brandt had filed a separate lawsuit against Deloitte & Touche. *See* R20-26; *see also* R20-6 (district court's noting that a number of other cases had been filed, including a suit against Deloitte & Touche).[3] Bainton conceded that the Rule 2004 subpoena as to Deloitte & Touche was "inappropriate by reason of the commencement of the action in this Court," R20-29, and withdrew that subpoena, *see* R20-31-32. Additionally, the court noted that "there is already on record a stipulation between Steel, Hector and Davis and the Trustee to allow the taking of a 2004 deposition," R20-4, and Bainton stated that Brandt and Steel, Hector, and Davis would work out the discovery issues, *see* R20-32. Finally, Bainton asked the court "not to tie the Trustee's hands and not to deprive the Estate of the use of bankruptcy rule 2004 as a discovery tool, only on the basis that that which we might discover through 2004 discovery is potentially relevant to the claims in this case" and requested that the court clarify its orders related to discovery. R20-40. The court then orally requested that the parties work together "to categorize the documents that should be discovered under the 2004 subpoenas issued and before the Court at this time, and get that all organized and ready." R20-55. On October 12, 1993, the district court issued a written order ("October 1993 Order") regarding the July 1993 Subpoenas. In that order, the court stated that the withdrawal of the Deloitte & Touche subpoena rendered moot Defendants' motion to compel as to that subpoena. *See* R6-146-2. Addressing the other subpoena, he noted the interests of both parties; while encouraging the parties to cooperate in preparing to produce relevant materials, he reiterated that the stay in discovery remained in place:

> The Court further notes that a First Amended Complaint was filed recently by the Plaintiff Trustee on September 20, 1993. As the parties are aware, the Court has twice stayed discovery, until the objections, if any, to the Amended Complaint are filed and heard, so that the Court may be better able

---

[3]Brandt requested that the court take judicial notice of eleven related actions. *See* R6-134; R6-135; R6-136; R6-137; R6-138; R6-139; R6-140; R6-141; R6-144.

to define the scope of discovery. This stay of discovery remains in effect; however, such stay does not affect the aforementioned alternative means of discovery now in place.

R6-146-3-4. The alternative means included stipulations between the parties that had already been made. *See* R6-146-3.

On January 4, 1994, Brandt served a Rule 2004 subpoena ("January 1994 Subpoena") on Lazard Freres & Company, Debtor's former investment bankers. *See* R8-186-2. On February 22, 1994, Brandt served a Rule 2004 subpoena ("February 1994 Subpoena") on Shearman & Sterling, Defendants' counsel in this action and special counsel to the Defendant outside directors from May 1991 until Debtor failed in September 1991. *See* R8-189-2. On February 28, 1994, Defendants filed an emergency motion to compel Brandt to comply with the September 1992, July 1993, and October 1993 Orders; this motion addressed the January 1994 Subpoena. *See* R8-186. On March 7, 1994, the Defendant outside directors filed a second motion to compel; this motion addressed the February 1994 Subpoena. *See* R8-189. On March 9, 1994, Defendants withdrew their motion as to the January 1994 Subpoena, on the ground that Lazard Freres had withdrawn its objection to producing the requested documents; Defendants emphasized that they would "welcome the opportunity" to address the larger issues raised in the motion, namely their request that the court "enjoin[ ] the Trustee from taking any further action in contravention of this Court's orders staying discovery...." R8-191-3.

On March 14, 1994, the district court conducted a hearing on Defendants' motions regarding the January 1994 and February 1994 Subpoenas. At the end of that hearing, the court noted that its intent had always been to stay discovery until there was a viable complaint. *See* R21-41. The court then stated:

> Now, I consider the effort to proceed with the 2004 discovery methods really to be an end run. It's designed to cause the stay for discovery to be rendered ineffectual.... In the view of the Court, it is causing this Court to be hamstrung in its ability to proceed this case toward trial. And I consider the use of the 2004 proceeding to be in violation of the original order that I entered taking back the jurisdiction in this case.... [T]here are at least two other orders that I entered subsequently, which reaffirm the original order and which reaffirm the stay that had been entered.

4

R21-42 (alterations added). The district court then reaffirmed the stay "on all discovery except as specifically authorized by an order of this Court. And that includes any discovery attempted under Rule 2004." R21-42-43. Defendants emphasized that they did not seek to stay discovery not related to this case. *See* R21-44. At the end of the hearing, Bainton stated: "Maybe I'm not smart enough. I honestly, Your Honor, don't understand. If I thought that I shouldn't have served 2004 ... in light of Your Honor's order, I wouldn't have." R21-46-47. On March 17, 1994, the district court issued an order which "again" stayed discovery ("March 1994 Order"). *See* R9-199. This order stated that the January and February 1994 Subpoenas violated the September 1992, July 1993, August 1993, and October 1993 Orders. *See* R9-199-3 & n.3, 5. The order again reaffirmed the stay:

> [U]ntil the Motion to Dismiss the Second Amended Complaint is ruled upon, the stay on discovery shall remain in effect. The scope of this stay encompasses any and all discovery relating to the allegations made against the named defendants as set forth in the Second Amended Complaint, including discovery initiated under Bankruptcy Rule 2004 or otherwise, except as specifically authorized by this Court. The Court will entertain motions for contempt and/or for sanctions should any party to this action violate this stay as reaffirmed and clarified herein.

R9-199-4-5 (footnote omitted).

On June 10, 1994, the Defendant outside directors filed a motion to compel Brandt to obey the September 1992, July 1993, August 1993, October 1993, and March 1994 Orders. *See* R11-264. This motion asserts that Brandt had sought to enforce the February 1994 Subpoena by filing motions to enforce the subpoena against Shearman & Sterling and to hold Shearman & Sterling in contempt for failure to obey the subpoena. In his recommendation of dismissal, the magistrate judge found that, on April 29, 1994, Brandt filed a motion in bankruptcy court ("April 1994 Motion") to hold Shearman & Sterling in contempt for failing to obey the February 1994 Subpoena. *See* R16-380-4 (citing R11-264); R11-264-7. Beck disputes this claim, noting: "On April 14, 1994, the Bankruptcy Court granted a motion by Mr. Brandt, as trustee, to *stay enforcement of the Rule 2004 subpoena* that the trustee had served on Shearman & Sterling in February" until the district court either vacated the March 1994 Order or gave Brandt permission " 'to take discovery of Shearman & Sterling.' " Brief of Appellant at 20-21; *see also* Brief of Appellant at Ex. D (order staying

enforcement of subpoena). The record does not include a copy of the April 1994 Motion but does include correspondence showing that Brandt was seeking in May 1994 to enforce a Rule 2004 subpoena against Shearman & Sterling. *See* R11-270-Ex. 4, Ex. 5.

On May 3, 1994, the district court granted in part and denied in part Defendants' motion to dismiss Brandt's Second Amended Complaint.[4] *See* R10-243-15-16 (listing surviving claims), *In re Southeast Banking Corp.,* 855 F.Supp. 353, 361 (S.D.Fla.1994), *aff'd,* 69 F.3d 1539 (11th Cir.1995) ("May 1994 Order").[5] Because claims from the Second Amended Complaint had survived the motion to dismiss, the district court lifted the stay of discovery that had been in effect since the September 1992 Order. *See* R11-266-2 ("June 15, 1994 Order"). In the June 15, 1994 Order that lifted the stay, the district court denied the Defendant outside directors' motion to compel as moot. *See* R11-266-2-3. On reconsideration, the district court enjoined Brandt "from seeking discovery through the use of Rule 2004 subpoenas on matters that relates or may relate to the allegations made by the Trustee in the Second Amended Complaint." R11-271-2 ("June 21, 1994 Order"). The district court applied that injunction to the February 1994 Subpoena. *See* R11-271-2. The district court emphasized that "[a]ll discovery that relates or may relate to the allegations made by the Trustee in the Second Amended Complaint shall be governed by the Federal Rules of Civil Procedure and shall take place in the District Court." R11-271-2. Subsequently, the district court denied an emergency motion to expedite discovery of Shearman & Sterling filed by Brandt on the ground that "no good faith basis exists for taking discovery of Shearman & Sterling." R12-284-3 ("August 1994 Order").

On October 28, 1994, Brandt, through Bainton, served a Fed.R.Civ.P. 30 subpoena ("October 1994 Subpoena") on Shearman & Sterling. *See* R13-297-Ex. G. This subpoena was filed in the Southern District of New York, rather than in the Southern District of Florida. *See* R13-297-Ex. G. On November 14, 1994,

---

[4]On February 2, 1994, Brandt filed the Second Amended Complaint, *see* R7-163, which was the operative complaint when the district court dismissed the case for discovery violations.

[5]The portions of this order that dismissed certain averments of the Second Amended Complaint were appealed by Brandt; addressing only those findings appealed, we affirmed in part and reversed in part. *See In re Southeast Banking Corp.,* 69 F.3d 1539 (11th Cir.1995).

6

the Defendant Outside Directors filed a motion for sanctions and fines against both Brandt and Bainton and for rescission of Bainton's *pro hac vice* admission "for failure to comply with courts orders and for discovery abuses." R13-297-1. This motion alleged that the October 1994 Subpoena violated the August 1994 Order. *See* R13-297-2. The Defendant Outside Directors emphasized that they sought "sanctions against the Trustee and his counsel"—but that "[i]n order that the creditors of [Debtor's] bankruptcy estate should not suffer from the misconduct of the Trustee and his counsel ... any sanctions imposed shall not be reimbursed, directly or indirectly, through application to the Bankruptcy Court." R13-297-9-10.[6]

On April 1, 1996, Brandt moved to file a Third Amended Complaint; in his memorandum in support of this motion, Brandt stated that the majority of the materials underlying the additions to the complaint came from materials produced by the FDIC and by Steel Hector & Davis. *See* R15-357-2 n.2. In opposition to this motion, Defendants noted that the FDIC was challenging Brandt's right to possess a number of documents produced by the FDIC. *See generally* R15-361. The FDIC's motion to require Brandt to return "Inadvertently Produced, Privileged Documents" was filed in a separate action, 92-2602-CIV-DAVIS. *See* R15-361-Ex.A. In response to that motion, the magistrate judge ordered:

> The plaintiff Trustee, his employees and counsel shall not utilize, directly or indirectly, any of the Post-Closing Privileged Documents or the information contained therein for any purpose whatsoever until further Order of this Court. Such documents or the information contained therein shall not be made available, directly or indirectly, to any third parties including but not limited to the media. Any violation of this provision *shall result in the imposition of sanctions*.

R15-361-Ex. B at 2 ("April 1996 Order").

On May 2, 1996, Brandt and Bainton were quoted in a *Miami Daily Business Review* article entitled "Trustee: I'd love to show smoking gun." *See* R16-367-Ex. H. The article addresses the disputed FDIC documents, which Brandt likened to the " 'Pentagon Papers' " and which Bainton likened to " 'the gun in a murder investigation.' " R16-367-Ex. H at 1. Brandt noted his disagreement with the April 1996 Order barring him from using the documents. *See* R16-367-Ex. H at 2. Based on Brandt's use of the FDIC

---

[6]We note with interest that Defendants, while arguing before us that the creditors' interests were not raised in the district court, did, in fact, raise that very argument themselves.

documents in preparing the Third Amended Complaint and on the *Miami Daily Business Review* article, Defendants filed an Emergency Motion to Dismiss the Action and for Monetary Sanctions. *See* R16-366.

The magistrate judge held a hearing on Defendants' motion to dismiss. At this hearing, Defendants' counsel focused on the fact that Brandt "isn't an ordinary opponent.... This is the Court's trustee, you, meaning the Southern District, [are] responsible for this person, you appointed him.... [T]his is the Southern District's appointee. He's a fiduciary." R25-10; *see also* R25-18 ("The trustee just doesn't get it. He is a fiduciary. His lawyer's an officer of the Court. He's an officer of the Court."). Defendants argued that it would be insufficient merely to remove Bainton because "the trustee is responsible for [Bainton's]" conduct and because "we have here not only a pattern of the misconduct, we have a pattern of approval and ratification." R25-24. Bainton argued both that he and Brandt had not engaged in misconduct and that there were innocent creditors who deserved their day in court:

> I don't think we've done anything wrong other than being overzealous in our representation of a client who's got important people to protect.
>
> Judge, you've lived in Miami all your life. People who bought Southeast Bank stock didn't think they were buying Alaskan gold mining stock.
>
> There's been a catastrophe here and the people who are responsible for it should be held accountable.

R25-59-60.

The magistrate judge recommended dismissal. *See* R16-380. Specifically, the magistrate judge found:

> that Plaintiff [Brandt] and his counsel [Bainton] have willfully violated orders of this Court on six separate occasions:

1.  Plaintiff and his counsel, on August 12, 1993, served Bankruptcy Rule 2004 subpoenas on Steel, Hector & Davis and Deloitte & Touche contrary to an order of this Court [September 1992 Order].

2.  Plaintiff and his counsel violated this Court's original order staying discovery [July 1993 Order], as well as two subsequent orders staying discovery [the August 1993 and October 1993 Orders] when Plaintiff and his counsel served a Bankruptcy Rule 2004 subpoena on Shearman & Sterling.

3.  Plaintiff and his counsel violated this Court's order of March 17, 1994 staying discovery by their continued efforts to use Rule 2004 subpoenas.

4.  Plaintiff and his counsel violated this Court's past orders by filing in Bankruptcy Court a Motion to Enforce Bankruptcy Rule 2004 subpoena on Shearman & Sterling.

5.  Plaintiff and his counsel again violated this Court's past discovery orders when on October 28, 1994 they served another Bankruptcy Rule 2004 subpoena on Shearman & Sterling in direct violation of this Court's [June 21, 1994 Order] enjoining the use of Rule 2004 subpoenas.

6.  Plaintiff and his counsel violated this Court's [April 1996 Order] restricting the utilization of privileged FDIC documents within the possession of Plaintiff and his counsel when Plaintiff and his counsel made various prejudicial statements relating to documents whose use had been barred by the Court and which appeared in the May 2, 1996 edition of the *Miami Daily Business Review.*

*In re Southeast Banking Corp. Sec. & Loan Loss Reserves Litig.,* 212 B.R. 397, 405 (S.D.Fla.1997) (alterations added).  After discussing Brandt's and Bainton's history, the court concluded "that [Brandt's] and [Bainton's] misconduct was willful, that it was unfairly prejudicial to Defendants in this cause, that they had been amply warned by this Court to comply with court orders, and that lesser sanctions would be unavailing." *Id.* at 407 (alterations added).  Accordingly, the magistrate judge recommended dismissing the case with prejudice and awarding Defendants attorneys' fees and costs caused by Brandt's and Bainton's misconduct. *See id..*

The district court held a hearing on Brandt's objections to the recommendation.  Brandt's new counsel[7] argued that the remedy for discovery abuses should not fall on the innocent creditors of Debtor:

[Brandt's] not a man who represents his own interest in this proceeding.

What he does is he's a fiduciary [sic] for literally thousands of shareholders and creditors and many others, all of whom suffered, in some cases, catastrophically, when Southeast Holding Corporation went into Chapter 7 proceedings.

...

[T]he question is more what is the remedy.  And if there are possible sanctions that could involve money, then why would it be fashioned or recommended that the remedy ought to fall devastatingly upon the rights of everyone who is represented by that estate.

---

[7]Bainton withdrew from all of the cases that were part of the MDL.  *See* R26-52.

R26-9-10 (alterations added); *see also* R26-36-37 ("The collapse of Southeast Bank, Your Honor, was a tragedy to this community.... Maybe it's a truth that people don't want to know, but I think there has to be the right for that story to be told. And whatever mistakes were made, they can be remedied.").

On August 1, 1997, the district court issued the order at issue in this appeal. *See In re Southeast Banking Corp. Sec. and Loan Loss Reserves Litig.,* 212 B.R. 397 (S.D.Fla.1997) ("August 1997 Order"). In the August 1997 Order, the district court found that:

Plaintiff [Brandt] and his counsel [Bainton] willfully violated this Court's orders through the following actions:

1.     On July 26, 1993, Plaintiff and his counsel served Bankruptcy Rule 2004 subpoenas on Steel Hector & Davis and Deloitte & Touche, in violation of [the July 1993 Order] (staying discovery).

2.     On January 5, 1994, Plaintiff and his counsel served Bankruptcy Rule 2004 subpoenas on Lazard Freres, in violation of the [July 1993, August 1993, and October 1993 Orders] (staying discovery).

3.     On February 24, 1994, Plaintiff and his counsel served Bankruptcy Rule 2004 subpoenas on Shearman & Sterling, in violation of the [July 1993, August 1993, and October 1993 Orders] (staying discovery).

4.     On April 29, 1994, Plaintiff and his counsel continued to pursue discovery through the enforcement of Bankruptcy Rule 2004 subpoenas against Shearman & Sterling, in violation of the [July 1993, August 1993, October 1993, and March 1994 Orders] (staying discovery).

5.     Plaintiff and his counsel made various prejudicial statements relating to documents whose use had been barred by this Court and which appeared in the May 2, 1996 edition of the *Miami Daily Business Review,* in violation of the [April 1996 Order] (restricting Plaintiff and his counsel's use of these documents, including disclosure, directly or indirectly, to the media).

*Id.* at 399 (bracketed text added; parenthetical text in original). The district court held that Brandt and Bainton had otherwise "engaged in abusive litigation practices" including "pursu[ing] discovery with *no good faith basis* for doing so" and "improperly obtain[ing] certain privileged documents from the FDIC, but continu[ing] to litigate the turnover proceedings and conceal[ing] their actions."[8] *Id.* (alterations added; emphasis in original). The district court noted that Brandt and Bainton had received "numerous warnings throughout this litigation" about the risk of sanctions, *id.,* and then concluded that "Plaintiff and his counsel's

---

[8]In support of this latter "abusive litigation practice," the district court cites to an order issued in a separate but related case. *In re Southeast Banking Corp.,* 212 B.R. at 399.

misconduct in this case and other litigation gives no indication to this Court that lesser sanctions would be effective," *id.* at 399-400. After finding that the misconduct had both prejudiced Defendants "in that they have suffered delay in attempting to clear their names" and had "interfered with this Court's ability to effectively resolve this litigation, as well as the other cases the Court is charged with overseeing," the court dismissed the action with prejudice. *Id.* at 400.

## *II. Analysis*

The district court adopted the magistrate judge's recommendation that this case be dismissed pursuant to Fed.R.Civ.P. 41(b).[9] "An appellate court reviewing the exercise of this power is constrained by the abuse of discretion standard." *State Exch. Bank v. Hartline,* 693 F.2d 1350, 1352 (11th Cir.1982) (citing Rule 41(b) and the "inherent ... authority [of the trial court] to enforce its orders and ensure prompt disposition of legal actions").

The district court's order addressed seven acts of alleged misconduct: Issuance of the July 1993 Subpoenas; issuance of the January 1994 Subpoena; issuance of the February 1994 Subpoena; filing of the April 1994 Motion in bankruptcy court; attempts to engage in discovery of Shearman & Sterling with "no good faith basis" for such discovery; obtaining and retaining the disputed FDIC documents; and the comments made by Brandt and Bainton in the May 2, 1996 edition of the *Miami Daily Business Review.* Beck does not dispute the district court's finding in the March 1994 Order that issuance of the January 1994 and February 1994 Subpoenas violated the July 1993, August 1993, and October 1993 Orders staying discovery, *see* Appellant's Brief at 32, but argues that the district court erred (1) in finding that the issuances of the July 1993, January 1994, and February 1994 Subpoenas were willful violations, (2) in finding that

---

[9]Rule 41(b) states, in relevant part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

(alterations added).

Brandt had attempted to enforce the Rule 2004 subpoena against Shearman & Sterling on April 29, 1994, (3) in considering the comments from the *Miami Daily Business Review* article, and (4) in dismissing the case rather than issuing lesser sanctions that would not have injured innocent creditors. We consider these arguments in turn.

*A.     July 1993, January 1994, and February 1994 Subpoenas*

Beck argues that it was inappropriate for Judge Davis to rule in 1996 that Brandt's issuances of the July 1993, January 1994, and February 1994 Subpoenas were willful. Beck notes that Judge Aronovitz, who had the case at the time that those subpoenas were issued, did not find that Brandt acted willfully in issuing the subpoenas. Beck argues that it was wrong for Judge Davis to decide, years after the fact, that Brandt acted willfully where Judge Aronovitz made no such a finding.

An interesting question not discussed by Beck is whether Beck would view such a belated finding as inappropriate if Judge Aronovitz had been the judge to make it. Beyond terming Judge Davis's ruling as "*ex post facto,*" Appellant's Brief at 46, Beck's argument is based on the fact that Judge Aronovitz never found that Brandt's actions were willful but, instead, issued new orders clarifying his rulings. Beck did not offer, nor did we find, any case law to support the conclusion that a judge cannot consider the entire history of a case—even conduct that occurred two years before—to determine if a litigant's conduct was willful. Accordingly, mere passage of time does not bar a district court from considering whether particular conduct amounted to willful violation of court orders.[10] We also reject any intimation that a judge who replaces another judge on a case cannot address whether conduct committed prior to the transfer was willful.[11]

---

[10]We do not discount the fact that passage of time *without further wrongdoing* is relevant to the question of whether dismissal is an appropriate remedy for wrongful conduct.

[11]Beck argues (without case support) that the standard of review should be different for a "judge who 'inherited' this case well after four of the five events that were alleged to have been violations of court orders had occurred." Appellant's Brief at 32. While Beck argues that the timing of Judge Davis's receiving the case means that he "was not in any position superior to that of this Court," *id.,* we are concerned that such a rule would provide a windfall to the fortunate malfeasant litigant whose case is transferred due to the retirement, recusal, or death of the initial judge or by the confirmation of new judges on the district court. Because we find that the district court erred in dismissing the case, rather than using a lesser sanction, we need not address

Having rejected the broader interpretations of Beck's argument, we are left with two subtler, more case-specific questions: First, did Judge Aronovitz's failure to find that Brandt's issuances of the July 1993, January 1994, and February 1994 Subpoenas were willful bar Judge Davis's later finding of willfulness? Second, does the fact that Judge Aronovitz's issued orders "clarifying" his prior orders bar a finding of willfulness on the ground that the prior orders were unclear? The answer to each of these questions is "No." As to the first question, we agree with Defendants that Judge Aronovitz was never asked to determine whether Brandt's issuances of the July 1993, January 1994, and February 1994 Subpoenas were willful. Thus, Judge Davis's later findings of willfulness do not contradict prior findings. As to the second question, we find that the fact that Judge Aronovitz issued orders "clarifying" his prior orders does not mean that Judge Davis was incorrect in finding that Brandt willfully violated those prior orders. It is true that a finding of willfulness is inappropriate where a litigant's "[v]iolation of a discovery order [is] caused by simple negligence, misunderstanding, or inability to comply." *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1542 (11th Cir.1993); *see also E.E.O.C. v. Troy State Univ.,* 693 F.2d 1353, 1357 (11th Cir.1982) ("A party's simple negligence or other action grounded in a misunderstanding of a court order does not warrant dismissal."). Sanctions, like a finding of contempt, for violation of an order are only appropriate if "the order stated in specific and clear terms what acts were required or prohibited." *E.E.O.C. v. General Dynamics Corp.,* 999 F.2d 113, 116 (5th Cir.1993). That said, the fact that Judge Aronovitz chose to state in his subsequent orders that he was clarifying the prior orders staying discovery did not bar Judge Davis from concluding that the prior orders were sufficiently clear to justify a finding of willfulness. The July 1993, August 1993, and October 1993 Orders made clear that all discovery related to this case was stayed until a viable complaint survived a motion to dismiss; these orders also made clear that this case was to be ruled by the Federal Rules of Civil Procedure, not by the Bankruptcy Rules. Beck has proffered no explanation for why these orders were unclear, nor has he given any justification for why the subpoenas where not covered by the stay in the

Beck's novel argument regarding standard of review.

13

July 1993, August 1993, and October 1993 Orders. If the Orders were unclear or unduly impeded Brandt's duties as trustee to investigate other cases against other defendants, Brandt could have sought clarification of the prior orders—but he never did. This situation is similar to that of *Malautea,* where we affirmed a finding of willfulness and the granting of a default judgment under Rule 37 because:

> [n]either defendant has provided a credible explanation of how it interpreted the discovery orders not to encompass the General Motors information. Neither defendant asked Judge Edenfield to clarify the orders, as a genuinely confused litigant, twice-threatened with the sanction of a default judgment, would have done. In particular, the defendants never asked Judge Edenfield to explain whether the orders covered the plaintiff's interrogatory that requested the General Motors information.

987 F.2d at 1543. Accordingly, we find that the district court did not err in holding that the issuances of the July 1993, January 1994, and February 1994 Subpoenas were willfully in violation of the July 1993, August 1993, and October 1993 Orders staying discovery and reaffirming the district court's jurisdiction over this case.

B.      *April 1994 Motion*

Beck argues that the finding regarding the April 1994 Motion is unsupported. We have been unable to find any documentation of the April 1994 Motion despite a thorough search of the record. However, Brandt filed a motion in the district court that appended correspondence between Bainton's law firm and Shearman & Sterling about a hearing to be held in June 1994 in the bankruptcy court regarding a motion to compel production of documents, *see* R11-270-Ex.4, Ex.5; while the brief in support of that motion is dated March 11, 1994, *see* R11-270-Ex. 6, the correspondence regarding the hearing is dated May 1994, *see* R11-270-Ex. 4, Ex. 5. Taken together, the correspondence and brief in support support the finding that Brandt was attempting in May 1994 to enforce a Rule 2004 subpoena against Shearman & Sterling in bankruptcy court. *See* R11-270-Ex.4, Ex. 5, Ex. 6. Thus, while there is no record support for the specific finding that Brandt moved *on April 29, 1994* to enforce a Rule 2004 subpoena against Shearman & Sterling, there is record support for a finding that Brandt moved to enforce a Rule 2004 subpoena against Shearman & Sterling *at some point in time after issuance of the March 1994 Order.* We find that, to the extent that the district court

erred in its finding that Brandt filed a motion on April 29, 1994 to enforce a Rule 2004 subpoena, that error was harmless.

C.      *Miami Daily Business Review article*

The impetus for the imposition of sanctions was the *Miami Daily Business Review* article. Beck argues that it was inappropriate for the district court to sanction the estate for the article where (1) the order allegedly violated by the article was from another case and (2) the article was published two years after the last discovery violation occurred in this case. We find that it is not error for a district court to consider violation of an order from a separate case where that wrongdoing is related to the case at hand.[12] *Cf. Chambers v. NASCO, Inc.,* 501 U.S. 32, 57, 111 S.Ct. 2123, 2139, 115 L.Ed.2d 27 (1991) (affirming sanctions imposed by district court "for conduct before other tribunals, including the FCC, the Court of Appeals, and this Court"; "As long as a party receives an appropriate hearing ... the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders."). Here, in a related case, Brandt and Bainton received disputed documents. They were told not to use the documents in any way—including direct or indirect contact with the media. Brandt and Bainton used the documents (1) to draft a complaint in this case and (2) to comment publicly on Defendants' liability. While the order was issued in another case, the wrongdoing affected this case. We need not answer the question of whether the district court erred in dismissing the case based on the article where no misconduct occurred in this case for a substantial period of time, because we find that lesser sanctions should have been levied in this case.[13]

D.      *Failure to utilize lesser sanctions*

---

[12]The Ninth Circuit has held that prior incidents of wrongdoing may be considered in assessing later incidents of wrongdoing but, where the later incidents are not "a continuation" of the earlier incidents, it is error to use the prior incidents "as a fulcrum to elevate the final incident of misconduct to a level that would allow dismissal of the action with prejudice." *United States v. National Med. Enters., Inc.,* 792 F.2d 906, 913 (9th Cir.1986). Similarly, we find that the district court may "consider ... the long pattern of conduct [including] ... several failures by plaintiffs to obey court rules and orders." *Jones v. Graham,* 709 F.2d 1457, 1462 (11th Cir.1983).

[13]We also need not address Beck's claim that the district court erred in dismissing this case when the case in which the April 1996 Order was issued was not similarly dismissed.

15

We find that the district court should have used lesser sanctions to resolve the problems caused by Brandt's and Bainton's misconduct without barring innocent creditors from pursuing their claims against Defendants. As Defendants themselves emphasized throughout the proceedings in this case, Brandt was a trustee of a bankruptcy estate, while Bainton was serving *pro hac vice* as attorney to Brandt in his role as trustee. This situation raises the concern that innocent parties who were unable to choose their own representatives might be injured through no fault of their own. "We have viewed dismissal as particularly harsh when the parties whose interests are at stake are not the named plaintiffs who have complete control of the litigation." *Hartline,* 693 F.2d at 1353. This principle is compatible with the Third Circuit's requirement that a district court consider whether a party has had personal responsibility for the wrongdoing of its attorney. *See Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 873 (3d Cir.1994)[14]; *see also Rogers v. Kroger Co.,* 669 F.2d 317, 322 (5th Cir.1982) (treating "direct plaintiff culpability" as an "aggravating circumstance" that may justify dismissal as a sanction for misconduct). This emphasis on the personal responsibility of the parties-in-interest is reasonable, not only to preserve the rights of truly innocent parties, but also because, where a party is personally involved in malfeasance, the likelihood that alternative sanctions will resolve the misconduct is lower. *See, e.g., Gratton v. Great American Communications,* 178 F.3d 1373, 1375 (11th Cir.1999) (affirming sanction of dismissal where "the district court found that plaintiff was culpable, and found that no other sanction would cure the harm"). Additionally, cases that have found that dismissal was appropriate despite the lack of personal wrongdoing on the part of the client have focused on the fact that the attorney engaging in misconduct was the "freely selected agent" of the client. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633-34 & n. 10, 82 S.Ct.

---

[14]The Third Circuit notes that, "[w]here ... a party is personally responsible for [misconduct], the effect of dismissal on third parties cannot be dispositive." *Adams,* 29 F.3d at 873. Our conclusion does not contradict the Third Circuit but states that where, as here, the misconduct is attributed to a representative party or its attorney, the district court should consider the malfeasance (if any) of the represented party, as well as the availability of alternative remedies caused by the fact of the representation.

16

1386, 1390 & n. 10, 8 L.Ed.2d 734 (1962).  Here, as emphasized by Defendants in the hearing before the district court, Brandt was *appointed* by the district court to act as trustee for Debtor's estate.

The fact that Brandt was an appointed trustee and Bainton was acting *pro hac vice* raises the possibility of alternative sanctions.  Specifically, the district court could have replaced Brandt as trustee to Debtor's estate and/or revoked Bainton's *pro hac vice* status.  While these sanctions are harsh, they may be used "[i]f the conduct at issue threatens disruption of the court proceedings or is a deliberate challenge to the authority of the district court."  *Schlumberger Techs., Inc. v. Wiley,* 113 F.3d 1553, 1561 (11th Cir.1997) (addressing disqualification of an attorney admitted *pro hac vice* ) (citations omitted);  *see also* 11 U.S.C. § 324(a) ("The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause.").  Where, as here, there is no evidence that the represented parties, *i.e.,* the creditors, were involved in misconduct, removal of the trustee and/or the trustee's attorney are viable sanctions, short of dismissal, that may resolve misconduct and permit the litigation to continue without further disruption.[15]

In finding that the district court abused its discretion in dismissing this case, we emphasize the limited nature of our holding.  We do not hold that it is *per se* inappropriate to use dismissal to sanction misconduct by a bankruptcy trustee (or other representative party).  Rather, in such a case, the district court should consider whether the represented parties are innocent *and* whether lesser sanctions, such as removal of the representative party, exist that could remedy the misconduct without injuring the represented parties.  We also do not belittle the strong interests that a court has in protecting itself and litigants from abusive, contumacious conduct.  Sanctions, including dismissal or issuance of a default judgment, must be available "to protect the ability of district courts to police discovery simply and speedily."  *Phipps v. Blakeney,* 8 F.3d

---

[15]Prior cases involving Brandt and Bainton have also resulted in sanctions.  *See Brandt v. Schal Assocs.,* 960 F.2d 640, 646-47 (7th Cir.1992) (affirming Fed.R.Civ.P. 11 sanctions against Brandt's counsel for "an egregious and unjustified abuse of the judicial process");  *Warner Bros. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1128 (2d Cir.1989) (dismissing Bainton's appeal of Rule 11 sanctions against him and imposing double costs for the appeal;  "In short, in this Court, as well as in the district court, Attorney Bainton has demonstrated a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly.").

788, 790 (11th Cir.1993).  "No litigant and no attorney, even if motivated by misguided perceptions of constitutional [or statutory] privilege, may be permitted to exhibit ... contumacious conduct without risk of sanctions under Rule 37 [or Rule 41(b) ]."  *Adolph Coors Co. v. Movement Against Racism & the Klan,* 777 F.2d 1538, 1543 (11th Cir.1985).  We do not foreclose the possibility that, in a future case, dismissal will be justified as a sanction for violation of court orders.  We find that, on the facts of this case, dismissal is not justified.

## *III. Conclusion*

The district court's August 1997 Order is REVERSED insofar as it ordered dismissal of this case. We REMAND this case for imposition of appropriate sanctions in accordance with this opinion.